UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BEVERLY HEFFINGTON, | Case No. 3:16-cv-02079-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| GORDON, AYLWORTH AND TAMI, P.C., | |
| Defendant. | |

_____

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Beverly Heffington ("Heffington") brings this lawsuit against Defendant Gordon, Aylworth and Tami, P.C. ("GAT"),[1] alleging violations of the Fair Debt Collection Practices Act ("FDCPA"). Heffington claims GAT violated the FDCPA's validation notice provision by failing

---

[1] Formerly Daniel N. Gordon, P.C.

to make required disclosures during its efforts to collect on her debt. Currently before the court is GAT's Motion for Summary Judgment, ECF No. 9 ("Motion"). For the reasons set forth below, the Motion is granted.[2]

*Background*

The facts of the case are undisputed. More than a decade ago, First Resolution Investment Corporation ("First Resolution") enlisted the help of the Defendant law firm, specializing in debt collection and then-named Daniel N. Gordon, P.C. ("Gordon Law"), to assist in collecting debts Heffington owed. (Decl. of Matthew R. Aylworth (ECF No. 10) ("Aylworth Decl."), ¶¶ 2, 4.) Heffington owed First Resolution the balance of two respective bank accounts. (Aylworth Decl. Exs. 2, 3 (collectively, the "2006 Letters").) Gordon Law first communicated with Heffington on June 19, 2006, when it sent her two letters, one for each account. (*Id.*) The letters detailed the purpose of the communication and the amounts owed. (*Id.*)

In 2007, a state court awarded First Resolution a combined general judgment against Heffington for the debts, which were then combined into a single judgment account. (*Id.* ¶¶ 3, 10.) It appears no payment was made on that account.

On June 23, 2016, GAT sent Heffington another letter, again requesting payment on the debt, which by this time had grown significantly due to accrued interest. (Aylworth Decl. Ex. 1 ("2016 Letter").) The 2016 Letter was printed on GAT's letterhead, which depicted GAT's current name and logo. (Aylworth Decl. Ex. 1.) Immediately below GAT's information was printed: "Formerly Daniel N. Gordon, P.C." (*Id.*) Daniel N. Gordon's name was also listed as an attorney of the law

---

[2] The parties have consented to jurisdiction by magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

firm along the right-hand border of the page. (*Id*.) The 2016 Letter, in relevant part, read: "This firm has been retained to collect a judgment in the sum of $25,623.94, which is the current balance, and which includes $11,360.91 of post-judgment interest. Interest may continue to accrue in accordance with the judgment until the balance is paid in full." (*Id*.)

Heffington subsequently filed suit in October 2016. (Compl. ¶ 9.)[3]

*Legal Standard*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

---

[3] Heffington has since amended her complaint to add a claim under § 1692e of the FDCPA. (First Amended Complaint (ECF No. 30).) However, for purposes of the present Motion, the original complaint, ECF No. 28, remains operative.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976).

However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a *genuine* issue for trial." FED. R. CIV. P. 56(e) (emphasis added). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

*Discussion*

Heffington sues GAT under § 1692g(a) the FDCPA, alleging GAT's 2016 Letter failed to convey adequately whether interest was continuing to accrue on her debt. GAT moves for summary judgment, arguing first that § 1692g(a) does not apply because the 2016 Letter was not an "initial communication," and second, that even if § 1692g(a) does apply, the 2016 Letter's language complies with the provision's requirements.

The FDCPA prohibits false or deceptive practices in connection with debt collection. 15 U.S.C. §§ 1692 et seq. This "broad remedial statute" is to be construed liberally, "in favor of the consumer in order to effectuate [its] goal of eliminating abuse." *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1078 (9th Cir. 2016) (citing *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011)).

When a debt collector sends a consumer an initial communication about a debt, often referred to as a validation notice, the FDCPA requires that communication, or any subsequent notice sent within five days of the initial communication, to contain certain disclosures. 15 U.S.C. § 1692g(a)(1). Section 1692g(a) provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing —
>
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

In this circuit, "the impact of language alleged to violate section 1692g is judged under the 'least sophisticated debtor' standard," which objectively questions whether a least sophisticated debtor "would likely be misled by the notice" given. *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988) (citing *Baker v. G.C. Services Corp.*, 677 F.2d 775, 778 (9th Cir.1982)). This standard is "designed to protect consumers of below average sophistication or intelligence, or those who are uninformed or naive, particularly when those individuals are targeted by debt collectors." *Gonzales*, 660 F.3d at 1062 (internal quotation omitted). Still, the standard

"preserves a quotient of reasonableness and presumes a basic level of understanding and willingness to read with care." *Id.* (internal quotation and alteration omitted). Whether a validation notice is likely to mislead a least sophisticated debtor is a question of law. *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997).

I.  Initial Communication.

GAT argues § 1692g(a)'s notice requirements do not apply to the 2016 Letter because its "initial communication" with Heffington for purposes of the provision was its 2006 Letters, sent a decade earlier.[4] Heffington disagrees, contending that because the defendant law firm changed its name from "Daniel N. Gordon. P.C." to "Gordon Aylworth & Tami, P.C." between 2006 and 2016, the 2016 Letter technically constitutes its "initial communication" to Heffington, thus bringing it within § 1692g(a) coverage.

Section 1692g(a)'s notice requirements apply only to a debt collector's "initial communication" with a consumer. 15 U.S.C. § 1692g(a). The Ninth Circuit has interpreted an "initial communication" to describe "the first communication *by any debt collector*," — not merely the first communication "about a debt." *Hernandez,* 829 F.3d at 1077–78 (emphasis added). Thus, § 1692g(a) governs each "initial communication" from "each and every" successive debt collector, even if a subsequent debt collector attempts to collect a debt about which another, prior collector already has sent a debtor an initial communication. *Id*. at 1074, 1081. Any other interpretation would create "loopholes that []would undermine the very protections the statute provides." *Id*. at 1075. For example, an original debt collector could "pass[] the debt on to a subsequent debt

---

[4] Heffington cannot challenge the 2006 Letters under the FDCPA because the statute imposes a one-year statute of limitations "from the date on which the violation occurs." 15 U.S.C. § 1692k(d).

collector in lieu of responding to [a] verification demand." *Id*. at 1077. Such a loophole "would, in practice, undermine consumers' efforts to verify their debts . . . ." *Id*.

GAT cites *Dorsey v. David B. Schumacher, P.C.*, No. 3:14-CV-1190-SI, 2015 WL 569958, at *3 (D. Or. Feb. 11, 2015), in which a debt collector's first letter, sent but never actually received by the debtor, and not a later communication about the same debt, actually received by the debtor, constituted the collector's "initial communication" under § 1692g(a). Heffington argues *Dorsey* is inapposite to her argument, the crux of which is not that she never received the letters but rather that GAT's name change was so misleading as to render the 2016 Letter an initial communication.

Heffington is correct that *Dorsey* lends little support for GAT's position. Still, Heffington does not cite and the court has not found a case that suggests a debt collector changing its name, even significantly, somehow starts anew § 1692g(a)'s notice requirements. Absent any guiding precedent to that effect, the court must employ this circuit's general § 1692g standard: whether the 2016 Letter, sent on letterhead expressly noting the name change, would likely mislead a least sophisticated debtor.

Both the "form and content" of the validation notice at issue are relevant. *Swanson*, 869 F.2d at 1225. For example, as to form, disclosures "placed at the very bottom of the form in small, ordinary face type, dwarfed by a bold faced, underlined message three times the size" have been held to be misleading. *Id*. With respect to content, even under the requisite liberal construction of the FDCPA, minimal inconsistencies are tolerated with respect to the identify of a debt collector or creditor. *See, e.g.*, *Caceres v. McCalla Raymer*, LLC, 755 F.3d 1299, 1304 (11th Cir. 2014) (holding a letter erroneously juxtaposing "debt collector" with "creditor" was not misleading under § 1692g(a)(3)); *Sullivan v. Credit Control Servs., Inc.,* 745 F. Supp. 2d 2, 8–9 (D. Mass. 2010)

(holding debt collector's reference to creditor as "Government Employees Insurance Company" rather than its colloquial acronym "GEICO" was not misleading)).

Viewing the instant facts through the eyes of the least sophisticated debtor, Heffington's argument here fails for three reasons. First, with respect to the form, notice of the name change appears conspicuously at the very top of the one-page 2016 Letter, with the new name, GAT, printed directly above "formerly Daniel N. Gordon, P.C." (Aylworth Decl. Ex. 1.) Even a least sophisticated debtor would understand that Gordon Law now operates as GAT. Second, as to content, GAT's name change was not as "significant" as Heffington suggests. (Pl.'s Resp. at 2.) Daniel N. Gordon's surname is the very first listed in "Gordon Aylworth & Tami, P.C.," and Daniel N. Gordon is listed in the 2016 Letter as a lead attorney at the firm.

Finally, a debt collector changing its business name for reasons presumably unrelated to the collection of a specific debt is not the type of fraudulent or deceptive practice the FDCPA was intended to address. In fact, allowing a debt collector to change its operational name and continue the flow of communication with its debtors uninterrupted furthers the FDCPA's goal of reducing confusion by maintaining consistency in a consumer's existing chain of communication with a single collection entity. This interpretation is therefore unlikely to undermine either the consumer protections the statute provides or consumers' efforts to verify their debts. Further, this outcome does not create any of the loopholes contemplated in *Hernandez* because there is little if any incentive for a debt collector to undertake the drastic measure of changing its business name simply to avoid standard validation notice requirements.

The undisputed factual record shows that Heffington's initial communication with GAT, formerly Gordon Law, occurred in 2006. Therefore, § 1692g(a) does not apply to the 2016 Letter.

II.    Disputed Amount of Debt Language.

Even if GAT's name change somehow did trigger § 1692g(a)'s validation notice requirements, the language of the 2016 Letter complies with those requirements.

GAT argues its 2016 Letter contains all of the information required under § 1692g(a)(1), including specifically the total amount of Heffington's debt, both principal and interest accrued. Heffington concedes that the 2016 Letter sufficiently states the amount of the debt, but asserts that by stating the debt "may," as opposed to "will," continue to accrue interest, the 2016 Letter creates ambiguity as to whether the amount listed is in fact continuing to accrue interest.

As outlined *supra*, § 1692g(a) of the FDCPA requires a debt collector to provide a debtor with a validation notice disclosing, among other information, "the amount of the debt." 15 U.S.C. § 1692g(a)(1). *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000) is a "leading authority" on whether a validation notice complies with the "amount of debt" provision. *Hutton v. Law Offices of Collins & Lamore*, 668 F. Supp. 2d 1251, 1256 (S.D. Cal. 2009).

The Seventh Circuit in *Miller* held that a debt collector's letter violated § 1692g(a)(1) when it disclosed "only part of the debt," that is, only the amount of the unpaid principal balance, with no mention of accrued interest or other charges. *Miller*, 214 F.3d at 875. In so holding, the court explained that a debt collector could, however, comply with § 1692g(a)(1) by "stat[ing] the total amount due — interest and other charges as well as principal — on the date the [] letter was sent." *Id*. at 875–76. In an effort to provide debt collectors with a formula to comply with the provision, the court drafted the following "safe harbor" language:

As of the date of this letter, you owe $ [the exact amount due]. Because of interest,

> late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1–800– [phone number].

*Id*. at 876.

A debt collector using that form "will not violate the 'amount of debt' provision, provided, of course, that the information [it] furnishes is accurate and [the debt collector] does not obscure it by adding confusing other information (or misinformation)." *Id*. A debt collector is not required to use that exact language, but "if [it] does, and (to repeat an essential qualification) does not add other words that confuse the message, [it] will as a matter of law have discharged [its] duty to state clearly the amount due." *Id.*

*Miller* conclusively establishes that § 1692g(a)(1) requires a debt collector to state the total amount due, including principal, interest, and other charges owed. That is, whether interest is accruing must somehow be included in the initial validation notice. Less clear, however, is how and with what level of specificity that interest accrual notice must be provided.

Federal courts remain split on this issue. One line of cases hold that no notice of on-going interest accrual is required. *See, e.g.*, *Jolly v. Shapiro*, 237 F. Supp. 2d 888, 893 (N.D. Ill. 2002) (holding "a collection letter which states the amount of debt as of a specific date does not violate § 1692g, and no reasonable person could conclude that such a collection letter does not inform the debtor of the amount due"); *Weiss v. Zwicker & Assocs., P.C.*, 664 F. Supp. 2d 214, 217 (E.D.N.Y. 2009) ("[E]ven the most unsophisticated consumer would understand that credit card debt accrues interest"); *Adlam v. FMS, Inc.*, No. 09 CIV. 9129, 2010 WL 1328958, at *3 (S.D.N.Y. Apr. 5, 2010) (same); *Schaefer v. ARM Receivable Mgmt., Inc.*, No. CIV.A. 09-11666-DJC, 2011 WL 2847768,

at *5 (D. Mass. July 19, 2011) (noting "[t]he language of the FDCPA does not require that a debt collection letter advise that the consumer's debt may increase" and holding "nothing [was] confusing or misleading" about a debt collection letter with no mention of interest accrual); *Goodrick v. Cavalry Portfolio Servs. LLC*, No. CIV 12-1822 PHX DGC, 2013 WL 4419321, at *1–*2 (D. Ariz. Aug. 19, 2013) (holding § 1692g(a)(1) required no notice that interest is accruing, as "even the most unsophisticated debtor would not have been confused by Defendant's failure to say that [the] longstanding loan was continuing to accrue interest.")

Other courts have gone even farther, adopting the stance that "adding language about further increases and charges in debt collection letters," may in fact "mislead[] consumers about the amount they owe." *Schaefer,* 2011 WL 2847768 at *5; *see e.g., Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947 (7th Cir.2004) (holding collection letter was unclear as to amount of debt due because it stated the current balance but also listed a telephone number to call to obtain the most current balance information); *Kolganov v. Phillips & Cohen Assocs., Ltd.*, No. 02–3710, 2004 WL 958028, at *3 (E.D.N.Y. Apr.8, 2004) (holding defendant violated § 1692g(a)(1) when collection letter included additional language to call a reference number to obtain the latest information about on-going charges); *Pifko v. CCB Credit Servs.*, No. 09–CV–3057, 2010 WL 2771832 at *3–*4 (E.D.N.Y. July 7, 2010) (holding debt collectors' only obligation is to "state the amount of the debt due," not to explain why the debt has increased; rather, it is the addition of confusing language regarding interest and other charges that may violate the FDCPA).

Still other courts have held that § 1692g(a)(1) requires notice not only that interest is accruing, but also of the applicable interest rate. *See, e.g.*, *Jones v. Midland Funding, LLC*, 755 F.

Supp. 2d 393, 396 (D. Conn. 2010) (holding "a validation notice fails to correctly state the amount of the debt as required by § 1692g(a)(1) unless it discloses the fact that interest is accruing and informs the consumer of the applicable interest rate"), *adhered to on reconsideration*, No. 3:08-CV-802 RNC, 2012 WL 1204716 (D. Conn. Apr. 11, 2012); *Stonecypher v. Finkelstein Kern Steinberg & Cunningham, Attorneys*, No. 2:11–cv–13, 2011 WL 3489685, at *5 (E.D. Tenn. Aug. 9, 2011) (holding § 1692g(a)(1) is violated when a debt collector "fails to indicate when interest is accruing and the applicable interest rate"); and *Marucci v. Cawley & Bergmann, LLP*, 66 F. Supp. 3d 559 (D. N.J. 2014) (see discussion *infra*).

In *Marucci*, a validation notice letter did not disclose whether interest was accruing and was later challenged under § 1692g(a). *Marucci*, 66 F. Supp. 3d at 561. The district court held that a "debt collector[] "must disclose the accrual of interest," but acknowledged the divergent jurisprudence on this point, explaining that "[o]ther cases, including one in this District, have taken the contrary position: that the obligation to disclose 'the amount of the debt' does not imply an obligation to disclose the running of interest." *Id*. at 566–67 (citing *Bodine v. First Nat. Collection Bureau, Inc.*, No. CIV.A. 10–2472 MLC, 2010 WL 5149847 at *2 (D.N.J. Dec. 13, 2010) (noting in dicta that all the FDCPA requires is notice containing "the amount of the debt," not a specific breakdown of interest and principal); *Schaefer*, 2011 WL 2847768 at *5; *Pifko*, 2010 WL 2771832 at *3–4; *Adlam*, 2010 WL 1328958 at *3; *Weiss*, 664 F. Supp. 2d at 217; and *Goodrick*, 2013 WL 4419321 at *2–3)).

Ultimately, however, the *Marucci* court concluded that "the least sophisticated debtor might be misled or confused as to how he or she could satisfy the debt obligation," and therefore, a claim

under §1692g(a)(1) is sufficiently stated when a letter does "not identify the date as of which the unpaid accrued interest [is] calculated, and [does] not specify whether interest will accrue on the unpaid principal balance." *Id*. at 565 (citation omitted). A person "might believe that he could pay his debt in full by remitting the sum of the principal and interest stated in the [] letter at any time after he received that letter." *Id*. To the court, "[w]hat the debtor needs to know is what he or she owes." As such, to "satisfy [its] obligation to state 'the amount of the debt,'" the court held "debt collectors must disclose the accrual of interest." *Id.* at 566–67.

At least two judges from the District of Oregon have followed two other districts in adopting an interpretation that no notice of on-going interest accrual is required if a debt collector does not seek to collect any interest. *Santibanez v. Nat'l Credit Sys., Inc.*, No. 6:16-CV-00081-AA, 2017 WL 126111, at *3 (D. Or. Jan. 12, 2017); *Powers v. Capital Mgmt. Servs., L.P.*, No. 6:17-CV-00127-MC, 2017 WL 3297997, at *2 (D. Or. Aug. 2, 2017); *accord. Martin v. Trott Law, P.C.*, 198 F. Supp. 3d 794, 806 (E.D. Mich. Jul. 26, 2016) ("[Plaintiffs] have not cited any authority for the apparently novel proposition that a collection letter can . . . violate . . . § 1692g(a)(1) by failing to accurately state the 'amount of the debt,' where it merely omits sums that the plaintiffs presume were due at the time of the sending, but which were not stated or demanded by the debt collector in the notice letter"); *Curto v. Palisades Collection, LLC*, 2011 WL 5196708, *8 (W.D.N.Y. Oct. 31, 2011) (holding summary judgment was appropriate when the collection letter did not mention interest and the defendant is not seeking interest).

In *Santibanez*, a debt collector sent a validation notice letter listing only a "balance" amount, with no mention of interest. *Santibanez*, 2017 WL 126111, at *1. Though the collector sought only

the principal balance of the debt, the debtor sued under § 1692g(a)(1), arguing the letter should have specified whether interest was accruing on that balance. *Id*. at *2. The court explained, "[a]lthough the Ninth Circuit has not decided the issue, several other federal courts have held that when interest is accruing on a debt, section 1692g(a)(1) requires a debt collector to disclose that fact and include both principle and interest when stating the amount due." *Id.* (citing *Miller,* 214 at 875; *Marucci*, 66 F. Supp. 3d at 566; and *Weiss*, 664 F. Supp. 2d at 217). In Santibanez's case, "there [] was no danger plaintiff would be misled," because the debt collector "never attempted to collect any interest and [] payment of the 'balance' listed in the letter would have cleared plaintiff's account." *Id*. at *3. "[T]he least sophisticated consumer would understand from the letter that payment of the 'balance' would satisfy the debt in full . . . ." *Id*. A later opinion from this district reached the same conclusion, and added that "in instances when interest is accruing on a debt[,] Section 1692g(a)(1) require[s] a debt collector to disclose that fact and include both princip[al] and interest when stating the amount due." *Powers,* 2017 WL 3297997, at *2 (citing *Miller*, 214 F.3d at 875 and *Santibanez*, 2017 WL 126111, at *3).

All of the aforementioned cases involved letters with no mention at all of interest accrual. The narrower question here arises from a letter that expressly mentions — but does not definitively state — whether interest continues to accrue.

The 2016 Letter comports with *Miller*'s primary directive by stating the total amount due — including post-judgment interest — on the date the letter was sent. However, *Miller*'s safe harbor language states: "because of interest . . . the amount due on the day you pay may be greater." This construction specifically conveys that interest is accruing. That the amount eventually paid may be

greater, therefore, depends not on interest accrual but on that fact that other fees that may be added. Compare that to the 2016 Letter, stating: "[i]nterest *may* continue to accrue in accordance with the judgment until the balance is paid in full." (Aylworth Decl. Ex. 1(emphasis added).) By employing "may" as the sentence's operative auxiliary verb, rather than conclusively stating that interest "will continue to accrue" or "is continuing to accrue," the 2016 Letter, as Heffington rightly notes, creates at least some uncertainty as to whether or not interest continues to accrue.

At least two district courts have addressed similar issues. In *Jackson v. Aman Collection Serv. Inc.,* No. IP01-0100-C-T/G, 2001 WL 1708829, at *1 (S.D. Ind. Dec. 14, 2001), a collection letter requested payment for "$463.47 total due plus accruing interest." The debtor sued under § 1692g(a), and the debt collector moved to dismiss. *Id.* Analyzing the language under *Miller*, the district court held the letter failed to "expressly state that the 'total due' is the amount due as of the date of the letter." *Id.* at *3. The court further noted that the "precise meaning of the phrase 'plus accruing interest' as used in [the] letter may be unclear." *Id.* Specifically, the "absence . . . of a statement of the date from which interest is accruing le[ft] to proof whether the phrase 'plus accruing interest' mean[t] interest accruing from the date of the letter, . . . interest accruing from the date the letter was sent, or interest accruing on the principal debt owed." *Id.* If it meant the latter, then the language "would suffer from the same inadequacies as the notices in *Miller*." *Id.* The phrase could have been clarified by stating "'plus accruing future interest' or 'plus accruing interest in the future' or 'plus interest that will accrue.'" *Id.* at *4. As such, the court could not "conclude that [the debtor] c[ould] prove no set of facts entitling him to relief on his claim . . . ." *Id.*

*Hutton v. Law Offices of Collins & Lamore*, 668 F.Supp.2d 1251, 1255 (S.D. Cal. 2009)

involved language most similar to that implicated in this case. The *Hutton* letter read: "this office has been retained . . . in regard to your outstanding balance due in the amount of $22,519.17, which may not include accruing interest . . . . As interest may continue to accrue, [p]lease call our office to verify current balance . . . ." *Id*. at 1253. The court compared that language to the *Miller* letter, which had been held insufficient under § 1692g(a)(1). *Id*. at 1257.

The court noted two key distinctions. *Id*. First, the *Miller* letter had "led with the 'unpaid principal balance'"; the Hutton letter, "however, led with [the] 'outstanding balance' of $22,519.17, a phrasing that implies it [wa]s the *entire* amount owed." *Id*. (emphasis in original). Second, "the unspecified interest referred to in the *Miller* [] letter was 'accrued,' in Hutton's [] letter it was 'accruing.'" *Id*. This distinction was significant because:

> [a]ccrued interest is past interest that a debtor owes at a given moment; it is, without a doubt, part of 'the amount of the debt' that the FDCPA requires a creditor to specify. Accruing interest, on the other hand, is interest that a debtor may owe in the future if his or her debt is not paid off in a timely manner. It is a potential add-on to his or her present debt that cannot be specified in a [] letter and can only be referred to in a hypothetical sense. Hence the safe harbor language that Judge Posner crafted in *Miller* . . . allow[s] a creditor to claim interest that accrues after a [] letter is sent to a debtor and before his or her debt is satisfied without specifying an amount of such interest, and without violating the FDCPA.

*Id*. "[T]hat the [] letter in *Miller* created uncertainty from the outset by referring to an 'unpaid principal balance,' and went on to mention accrued (past tense) interest" made it a "distinctive case." *Id*. Hutton, conversely, "was informed up front" of his "outstanding balance," which "l[eft] nothing to the imagination." *Id*. The "clear implication" of the *Hutton* letter's warning that the debt *may not* have been accruing interest was "equivalent to the 'safe harbor' language" in *Miller*. *Id.* at 1258. Because "[t]here is no way in a []letter to specify an amount of interest that may accrue in the

future," the "best the [debt collector] can do — and all they are obliged to do under *Miller* — is to let [the debtor] know that his outstanding balance may increase because of interest and provide him with an 800 number to call to obtain his latest [] balance." *Id.*

The court finds *Hutton*'s reasoning both persuasive and consistent with this district's holdings in *Powers* and *Santibanez*. As *Hutton* soundly explains, *Miller* undoubtedly allows a debt collector to claim interest that accrues after an initial letter is sent to a debtor and before her debt is satisfied, without violating the FDCPA, so long as the amount of interest is disclosed. Though the 2016 Letter's language differs slightly from the *Miller* letter, just like the letter in *Hutton*, it is functionally equivalent to *Miller*'s safe harbor. And here, like in *Hutton*, the letter contains a "statement of the whole debt" and makes clear that the "post-judgment" interest represented is that which already has been accrued. The interest that "may" continue to accrue on Heffington's debt is, therefore, merely a potential add-on to her existing debt. The amount of future interest that may accrue cannot be specified in a letter and can be referred to only in a hypothetical sense. GAT has therefore, like the debt collector in *Hutton*, accomplished the best it can do, and all it is obligated under *Miller* to do: informed Heffington that her outstanding debt may increase, if not paid, because of future interest.

This holding is not inconsistent with *Powers* or *Santibanez*. As of the date this suit was filed, it does not appear GAT attempted to collect any interest additional to that disclosed in the letter. The only debt sought was the amount listed in the letter. The language of the 2016 Letter also avoids the confusion that plagued the notice in *Jackson* because it expressly states how much post-judgment interest is due.

However exacting, the least sophisticated consumer standard articulated in *Gonzales* preserves a quotient of reasonableness and presumes a basic understanding and willingness to read with care. Such a consumer reasonably can be expected to understand she may be liable for a greater amount of debt due to future accruing interest when she receives notice that a debt "may" continue to accrue interest. Therefore, the 2016 Letter is not misleading as to the amount of the debt owed.

Heffington urges that *Hutton* is no longer reliable because the case "took place before [] recent development in the law . . . ." (Pl.'s Resp. at 4.) Heffington references two cases: *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72 (2d Cir. 2016) and *Marucci*, 66 F. Supp. 3d 559 (D.N.J. 2014). To be sure, the *Avila* court held, post-*Hutton*, that the FDCPA requires debt collectors to disclose notice of interest accrual. *Id*. at 76. But it derived that proposition not from § 1692g, but from § 1692e. *Id*. Heffington has, since the present Motion was filed, added a § 1692e claim to her First Amended Complaint. (*See* First Am. Compl. (ECF No. 30) ¶ 10.) Consequently, though it may be appropriate to revisit this argument in the future, to date, GAT has moved against only the § 1692g(a) claim. As such, the court addresses only that subsection here, to which *Avila* is inapplicable.

The second case, *Marucci*, neither supercedes nor undermines *Hutton*. First, district court opinions are not controlling authority, and this court is not required to follow decisions by other district courts absent Ninth Circuit precedent. *See Camreta v. Greene*, 563 U.S. 692, 709, n.7 (2011) (citing 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011)) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."). Second, this court's

conclusion is in fact consistent with *Marucci*. That court held, analyzing a letter with "no indication of whether interest has accrued or will continue to accrue," that a debt collector simply "must disclose the accrual of interest." GAT affirmatively disclosed that interest may accrue. With that disclosure, by *Marucci*'s logic, no least sophisticated debtor could "be misled or confused as to how he or she could satisfy the debt obligation." Moreover, no person reading the 2016 Letter would "believe that he could pay his debt in full by remitting the sum of the principal and interest stated in the [] letter at any time after he received that letter." Rather, the reader would know what he or she needs to know: "what he or she owes."

In sum, § 1692g(a) of the FDCPA does not apply to the 2016 Letter because it is not an initial communication. Even if it did apply, the language of the 2016 Letter comports with the statute's notice requirements. Because Heffington, the nonmoving party, fails to show a genuine issue as to any material fact, GAT is entitled to summary judgment as a matter of law on the § 1692g claim.

*Conclusion*

For the reasons stated above, GAT's Motion for Summary Judgment, ECF No. 9, is GRANTED.

IT IS SO ORDERED.

DATED this 28th day of December, 2017.

/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge